IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-01399-JEO |
| ) | |
| CEMEX SOUTHEAST, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This is a personal injury case, filed after Plaintiff James Robinson fell from a platform on which he was working and sustained physical injuries. (Doc. 1-1 ¶¶ 14-15, 17-18).[1] Robinson asserts claims for negligence, wantonness, and subsequent negligence against Defendants CEMEX Southeast, LLC ("CEMEX") and Randy Martin. (*Id*. ¶¶ 24-27). The court[2] has before it Defendants' motions to dismiss. (Docs. 3, 20). The motions are fully briefed, (docs. 27, 28), and are ripe for decision. For the reasons that follow, both motions are due to be granted.

---

[1] Citations herein to "Doc(s). __" are to the document numbers assigned by the clerk, as reflected on the docket sheet to the pleadings, motions, and other documents in the court file.

[2] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 24).

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. That provision is read, in turn, in light of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court is required to accept the well-pled factual allegations of the complaint as true and give the plaintiff the benefit of all reasonable factual inferences. *See Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*,

550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

## II. BACKGROUND

### A. Allegations in the Complaint

Plaintiff alleges he fell several feet from an elevated work platform at a CEMEX facility and suffered severe injuries as a result. (Doc. 1-1 ¶ 15). The platform "was constructed[,] operated and maintained by the Defendants." (*Id*. ¶ 19). The platform where Robinson was working did not have "proper guards or devices . . . to prevent the Plaintiff or any other person from suffering a fall . . ." and causing injuries. (*Id*. ¶ 17). Defendant Martin was the supervisor or project manager for CEMEX when Plaintiff fell from the platform. (*Id*. ¶ 12). Robinson contends both Defendants had "an obligation to properly guard the platform and to have guardrails and other protective guarding systems or devices to prevent" a fall from the platform. (*Id*. ¶¶ 15-16). They also had, according to the complaint, an "obligation and duty" to provide Robinson with a safe place to work. (*Id*.). Robinson contends both Defendants breached their duties "by [their] negligence and wantonness which caused the serious permanent injuries to the Plaintiff." (*Id*.).

At the time of the accident, Robinson "was working as an employee of a temporary agency Labor Finders." (*Id*. ¶ 8). Robinson "never considered himself

3

an employee of CEMEX" and "was told on numerous occasions by CEMEX personnel that he was not an employee of CEMEX." (*Id*. ¶¶ 9, 10). He was, however, "performing a function of Defendant CEMEX as a result of his contract of employment with Labor Finders" when he fell from the platform. (*Id*. ¶ 14). Additionally, Robinson alleges "[a]t all times wherein Plaintiff was the employee of Labor Finders who contracted with CEMEX for the contract labor of the Plaintiff." (*Id*. ¶ 20).

## B. Procedural History

On July 27, 2018, Plaintiff filed a complaint in the Circuit Court of Jefferson County, Alabama, against CEMEX and Randy Martin, as well as fictitious defendants.[3] (Doc. 1-1 at 5-12). On August 30, 2018, Defendant CEMEX filed a notice of removal based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, (doc. 1), as well as a motion to dismiss. (Doc. 3). Defendant Martin consented to removal and filed a separate motion to dismiss. (Doc. 1-3 ¶ 6; Docs. 20, 22). On September 10, 2018, Plaintiff filed a motion to remand pursuant

---

[3] This is not the first complaint filed by Plaintiff with regard to the incident at issue. On March 12, 2018, Plaintiff filed a substantively identical complaint against CEMEX in the Circuit Court of Jefferson County, Alabama, asserting the same claims and damages as the instant complaint. (Doc. 1-4). On April 13, 2018, CEMEX removed the action to this court based on diversity jurisdiction and filed a motion to dismiss. (*See* 2:18-cv-00590-JEO, Docs. 1, 2). On April 20, 2018, Plaintiff voluntarily dismissed the action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*Id*. at Doc. 6). Approximately two months later, Plaintiff filed the instant complaint. (*See* Doc. 1-1 at 3). The instant complaint is substantively identical to Plaintiff's initial complaint except Plaintiff added Randy Martin as a defendant and asserted that he is a citizen of Alabama. (*Compare* Doc. 1-4 with Doc. 1-1).

4

to 28 U.S.C. § 1447(c). (Doc. 7). Plaintiff contended the court does not have diversity jurisdiction over his complaint because CEMEX has failed to meet its burden of proof as it relates to the amount in controversy requirement. (*Id*.). The court denied the motion to remand on October 18, 2018. (Doc. 26). The motions to dismiss (docs. 3, 20) remain and are addressed below.

**III. DISCUSSION**

    **A. CEMEX's Motion to Dismiss**

CEMEX argues that Plaintiff's claims against it are barred by the Alabama Workers' Compensation Act because it was a "special employer" of Plaintiff. (Doc. 3 at 4-11). "Alabama law, like that of other states, stipulates that when an employee covered by the [Alabama Workers' Compensation] Act suffers from an injury in an on-the-job accident, benefits under the Act are the exclusive remedy available against the employer." *Tweedy v. Tennessee Valley Authority*, 882 F.2d 477, 479 (11th Cir. 1989) (citing *Steagall v. Sloss-Sheffield Steel & Iron Co.*, 205 Ala. 100, 101, 87 So. 787, 788 (1920); Ala. Code § 25-5-53 (1975)). Specifically, the Alabama Workers' Compensation Act includes an exclusive remedy provision, which provides that no employer "shall be held civilly liable for personal injury . . . to the employer's employee . . . whose injury . . . is due to an accident . . . which . . . originates in the employment." Ala. Code § 25-5-53 (1975). Alabama law is well established that this "exclusive remedy provision extends to 'special

employers,' which have been described as 'individuals or businesses who, for practical purposes, may be considered primary or co-employers of the injured employee.'" *Gaut v. Medrano*, 630 So. 2d 362, 364 (Ala. 1993) (quoting *Rhodes v. Alabama Power Co.*, 599 So. 2d 27, 28 (Ala. 1992)).

The Alabama Supreme Court has adopted the following test to determine whether an employer qualifies as a "special employer":

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and[]
>
> (c) the special employer has the right to control the details of the work.

*Terry v. Read Steel Products*, 430 So. 2d 862, 865 (Ala. 1983) (internal quotations and citation omitted). The second and third prongs of this test are not in dispute. In response to the motions to dismiss, Plaintiff "concede[d] that [CEMEX] had the right to control the details of the work and that the work being done was essentially that of [CEMEX]." (Doc. 27 at 4). The first prong, whether Plaintiff made a contract of hire with CEMEX, remains at issue. It also is "the most important criterion to be scrutinized." *Hicks v. Alabama Power Co.*, 623 So. 2d 1050, 1053 (Ala. 1993). CEMEX does not argue that Plaintiff entered into an express contract

of hire with it. The sole question for the court, therefore, is whether an implied contract of hire existed between Plaintiff and CEMEX. If an implied contract of hire existed between Plaintiff and CEMEX, then CEMEX was Plaintiff's "special employer" and the exclusive-remedy provisions of the Workers' Compensation Act extend to CEMEX. *See Ex Parte Tenax Corp.*, 228 So. 3d 387, 393 (Ala. 2017).

Plaintiff argues that "[t]here is no substantial evidence that CEMEX had an implied contract with [him] and, to the contrary, [he] testified via [a]ffidavit that he had no implied contract with CEMEX."[4] (Doc. 27 at 6). The court disagrees.

The Alabama Supreme Court considers a number of factors to be significant in the analysis of whether a worker impliedly consented to a contract of hire. In particular, Alabama courts consider (1) whether the general employer is, in reality, acting as a labor broker or a temporary employment agency for the special employer, *see Hicks*, 623 So. 2d at 1055 (finding a question of fact existed as to whether the defendant was a special employer); *Key v. Maytag Corp.*, 671 So. 2d 96, 100 ("a special employer-employee relationship exists when the general employer is an employment agency or employment service which furnishes

---

[4] Plaintiff asserts in the affidavit that he had a written agreement for employment with Labor Finders, but he did not have any written or implied agreement with CEMEX. (Doc 27 ¶ 2). He also states he never considered himself to be a CEMEX employee. To the contrary, he asked about employment with CEMEX and was told that the company was not hiring. (*Id.* ¶ 4). He did not receive any benefits from CEMEX and he was paid with checks issued by Labor Finders. (*Id.* ¶¶ 4-5).

7

employees under contract. . . ."); (2) whether the special employer provided the workers' compensation insurance, *Gaut*, 630 So. 2d at 363, 368 (holding that alleged special employer, which did not provide the employee's workers' compensation insurance, was not entitled to a summary judgment); *Pinson v. Alabama Power Co.*, 557 So. 2d 1236, 1237 (Ala. 1990); and (3) "whether the employment with the borrowing employer was of such duration that the employee could be reasonably presumed to have evaluated and acquiesced in the risks of his employment" *G.UB.MK Constructors v. Garner*, 44 So. 3d 479, 487 (Ala. 2010) (quoting *Gaut*, 630 So. 2d at 367); *see also Rast Constr., Inc. v. Peters*, 689 So. 2d 781, 784 (Ala. 1996)). The main focus is on what the employee intended in providing services for the alleged special employer. *See Garner,* 44 So. 3d at 487; *Tenax*, 228 So. 3d at 392. A worker employed by a general employer that is "unambiguously [a] temporary employment placement agenc[y] . . . necessarily agrees to a contract of hire with the special employer." *Garner*, 44 So. 3d at 488.

The allegations in the complaint clearly establish that Plaintiff entered into an implied contract for hire with CEMEX. Specifically, the complaint provides that Plaintiff "was working as an employee of a temporary agency Labor Finders" at the time of the incident. (Doc. 1-1 ¶ 8). It also alleges Plaintiff "was performing work assignments at CEMEX as a result of the contract between CEMEX and Labor Finders" and "as a result of his contract of employment with Labor Finders."

(*Id*. ¶¶ 4, 14). Additionally, the complaint alleges Plaintiff provided contract labor to CEMEX. (*Id*. ¶ 20) ("At all times wherein Plaintiff was the employee of Labor Finders who contracted with CEMEX for the contract labor of Plaintiff.").

Alabama courts repeatedly have found that a special employer-employee relationship exists under such circumstances. *See Hicks*, 623 So. 2d at 1054-55; *Marlow v. Mid–South Tool Co*., 535 So. 2d 120 (Ala. 1988); *Bechtel v. Crown Central Petroleum Corp*., 495 So. 2d 1052 (Ala. 1986); *Pettaway v. Mobile Paint Mfg. Co.*, 467 So. 2d 228 (Ala. 1985); *Terry,* 430 So. 2d at 865. In *Hicks*, the Alabama Supreme Court expounded on its previous holdings concerning the existence of a special employer-employee relationship when the general employer is an employment agency or service. It specifically found that in the just mentioned cases – *Terry*, *Pettaway*, *Marlow* and *Betcthel* – each employee had an implied contract with the special employer:

> In these cases, the general employer was nothing more than the bargaining agent or employment agent for the plaintiffs. When those plaintiffs contacted [the general employers], it was not for the purpose of entering into employment with those companies to do the work of those companies; rather, the plaintiffs intended for the general employers to "market" them to secure employment with another, special employer. Once those plaintiffs were presented by the employment services to the special employers, those plaintiffs then entered into a contract of hire with those special employers.

9

*Hicks*, 623 So. 2d at 1054.[5] The allegations in the instant complaint fall squarely within this analysis.[6]

Based on the foregoing, the court finds that the allegations contained in the complaint clearly establish that Plaintiff was a worker employed by a general employer that was unambiguously a temporary employment agency. *See Garner*, 44 So. 3d at 488. As such, Plaintiff necessarily agreed to an implied contract of hire with CEMEX. The court, therefore, concludes the allegations in the complaint establish that CEMEX was a "special employer" and it is entitled to the same protections under the Alabama Workers' Compensation Act as the general employer. CEMEX's motion to dismiss is due to be granted.

---

[5]The court recognizes that each of these cases was decided on a motion for summary judgment and not on a motion to dismiss such as the one before this court. However, the principles articulated in these cases are applicable to Plaintiff's allegations in the present complaint.

[6]The court rejects Plaintiff's argument that the allegations are more akin to an independent contract relationship like the one in *Gaut*, 630 So. 2d at 368. In *Gaut*, the Alabama Supreme Court found there was a question of fact as to whether the general employer, Industrial, was a temporary employment agency or an independent contractor. *Id*. Some of the controlling factors were: (1) the employment application identified Industrial as a "maintenance company" and not an employment agency; (2) Industrial had its own clearly identified area inside the plant; (3) Industrial provided the plaintiff with all the tools he needed to do his work; (4) Industrial had supervisors on site who coordinated the scheduling for the employees; and (5) plaintiff did not have any knowledge of the agreement between Industrial and the defendant. *Id.* at 363-68. Neither these facts nor similar allegations are articulated in the complaint in the present case. To the contrary, as noted already, the complaint specifically identifies Labor Finders as a "temporary agency." (Doc. 1-1 ¶ 8). Additionally, the complaint alleges Plaintiff "was performing work assignments at CEMEX as a result of the contract between CEMEX and Labor Finders." (*Id*. ¶ 4). Plaintiff understood he "was performing a function for . . . CEMEX as a result of his contract of employment with Labor Finders," (*id*. ¶ 14), unlike the plaintiff in *Gaut* who believed he was performing maintenance work for Independent.

**B. Martin's Motion to Dismiss**

The compliant also states the same claims for negligence, wantonness and subsequent negligence against Martin as it does against CEMEX. Martin was an employee of CEMEX at the time of the accidence. (Doc. 1-1 ¶¶ 11, 12). Because the court concludes that Plaintiff had an implied contract with CEMEX, Martin and Plaintiff were both employees of CEMEX for purposes of the motion to dismiss.

As stated above, the Alabama Workers' Compensation Act is "the exclusive remedy when an employee is injured in an accident proximately resulting from, and that occurred while the employee was engaged in, the actual performance of the duties of his or her employment." *Ex parte Shelby County Health Care Auth.*, 850 So. 2d 332, 338 (Ala. 2002). As related to co-employees, the Act provides for recovery for actions from "willful conduct"[7] that results in, or

---

[7] Alabama Code § 25-5-11(c) defines "willful conduct" as any of the following:

> (1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of "willful conduct."

> (2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.

proximately causes, injury or death. Ala. Code § 25-5-11. Alabama law prohibits actions against co-employees based on negligence or wantonness. *See Powell v. U.S. Fidelity & Guar. Co.*, 646 So. 2d 637, 638 (Ala. 1994). Simply put, the exclusivity provision of the Workers' Compensation Act extends complete immunity to co-employees from civil liability for all causes of action except those based on willful conduct. *See id.*; *see also Jones v. Lowe*, 611 So. 2d 345, 346 (Ala. 1992).

Plaintiff's complaint does not allege any claims based on willful conduct. Rather, the claims asserted against Martin are for negligence and wantonness and subsequent negligence. (Doc. 1-1 ¶¶ 24-27). Additionally, the complaint does not allege any facts that could potentially constitute willful conduct within the meaning of Alabama Code § 25-5-11. As such, Plaintiff's claims against Martin are due to be dismissed.[8]

---

(3) The intoxication of another employee of the employer if the conduct of that employee has wrongfully and proximately caused injury or death to the plaintiff or plaintiff's decedent, but no employee shall be guilty of willful conduct on account of the intoxication of another employee or another person.

(4) Willful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent total disability as a proximate result of the willful and intentional violation. . . .

[8]Because of this conclusion, the court does not need to address whether Martin was properly served with a copy of the summons and complaint.

## IV. CONCLUSION

Based on the foregoing, both motions to dismiss are due to be granted. A separate order will be entered.

**DATED**, this 28th day of November, 2018.

                                                  _____
                                                  **JOHN E. OTT**
                                                  Chief United States Magistrate Judge